UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v ITC UPI SEMICONDUCTOR CORP v ITC UPI SEMICONDUCTOR CORP v ITC UPI SEMICONDUCTOR CORP v ITC UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR CORP v UPI SEMICONDUCTOR Specifically, the Commission erroneously interpreted the aiding and abetting provision of the consent order to prohibit and penalize upstream component sales by UPI outside of the United States, leading to lawful downstream product importations by non-respondents. The fundamental premise of UPI's appeal is that the ITC cannot regulate a greater scope of importation-related conduct by consent order than it can regulate upon a Section 337 violation determination. And the ITC should have construed the consent order according to its statutory authority. Instead, the Commission penalized UPI under the consent order for upstream component sales associated with downstream importations by non-respondents that the Commission does not have the statutory authority to regulate. Well, that was really my question. So where would a party that feels aggrieved by the consent order go for enforcement of that consent order? It can go to the Commission, Your Honor, but... You said the Commission can't enforce... No, the Commission can enforce the consent order, but it enforced the consent order in an overbroad manner. What we're challenging is the Commission's interpretation of the consent order, not that the consent order is valid. Well, what is the language, then, of the consent order? What is the exact language that you think has been wrongly interpreted? It's the aiding and abetting provision, Your Honor. No, I want you to read to me the exact term that you think has been wrongly construed. The Commission found that UPI violated the language which begins, or knowingly aid, abet, encourage, participate in, or induce importation into the United States, the sale for importation in the United States, or the offer for sale or use in the United States after importation without the consent or agreement of Rich Tech, any DCDC controllers or products containing the same, which infringe the asserted patents, or which are produced using, or which contain Rich Tech's asserted trade secrets. So you can't aid or abet or participate in the importation into the U.S. of any DCDC controllers or products containing the same, which infringe. So aren't the products which were imported that are at issue, the downstream ones you're talking about, don't they contain the same? Your Honor, those are third-party downstream products. They do contain UPI DCDC controllers. However, because they're third-party products... No, that's not what I asked you. So there are being imported into the United States products which contain the UPI DCDC controllers. So aren't you knowingly aiding and abetting in their importation when you sell them to someone who you know will import it into the U.S.? That's the Commission's interpretation of the consent order, Your Honor, but we believe the consent order has to be construed as limited only to UPI's products. But these are UPI products. You said that UPI DCDC controllers are contained within these products. Within third-party downstream products, these are larger products that third parties take overseas. They take the upstream... Well, then why would you write the language or products containing the same which infringe? That necessarily implies a DCDC controller contained inside a larger product. I understand your point, Your Honor, but UPI certainly didn't believe that it was agreeing to a greater scope of regulation by the Commission than the Commission could have regulated had UPI been found to have been in violation of Section 337. So you're basically asking us to read or understand this provision, say, UPI in front of the word products. Any DCDC controllers or UPI products containing the same. I think that's what it has to mean, Your Honor, and there's two reasons for that. The first is, as a federal agency, the ITC is a creature of statute, and it must find authority for its actions in its enabling statute. There simply is no authority in Section 337 which would permit the Commission to order more severe remedies by consent than can be ordered when the Commission makes a violation determination. And where does it say that? I'm sorry, where is it? Do you have a case that says that? Sure, that's the Kiyosera decision. I believe it's also the Vast Fame decision from this Court. Both of those cases say that, that the Commission must find authority for its actions in its enabling statute. Was it a consent order in Kiyosera? No, Your Honor. So the question in Kiyosera wasn't, are the parties allowed to contract for a broader remedy than the Commission might otherwise have been allowed to give? That's not what Kiyosera stands for, does it? That's right. Kiyosera merely delimits what the Commission can and cannot do in a violation proceeding. But what we submit to this Court... So where is your precedent that says that there is no authority for allowing a consent order by agreement of the parties which exceeds the Commission's enforcement authority? Two pieces of authority. The first is the statute itself. The Commission must find authority in its enabling statute, Section 337. There's no authority in Section 337 which would permit the Commission to regulate conduct associated with downstream third-party product importation. That's what the Commission's done here. In Kiyosera, this Court said those importations could not be excluded from the United States in the absence of heightened findings required for a general exclusion order. By the same token, upstream component sales associated with those same lawful downstream importations are outside the Commission's ability to regulate in the context of a 337 violation proceeding. Our position on appeal is the Commission can do no more by consent order. The Commission cannot impose a more severe remedy by consent order than what's set forth in its enabling statute. How is the Commission imposing a more severe remedy? You drafted this. You signed it. It is a settlement agreement that has been validated by the Court. I don't see how the Commission is doing anything other than enforcing the terms of the contract that you drafted and you signed. Well, Your Honor, even in those circumstances, there have been many decisions from other circuits where the Courts have said that a consent order by an agency, in many of the cases that we cite in our briefs, they were state agencies, but the principle is the same. An agency cannot contract to take action that's in conflict with its enabling statute. And that's what we think the ITC's done here. It's interpreted the consent order in such a way that it's regulating a scope of importation activity that its enabling statute does not allow it to do. Suppose that you had drafted this and you actually said expressly, so there's no question, or products by any third-stream, downstream, third-party seller of any kind that contain DC, DC controllers, so that my hypothetical is suppose this consent order could not be argued to be ambiguous in any way, would you still have a right to come into the Court and tell us that we cannot allow the ITC to enforce the consent order that you drafted? Say it's unambiguous. I understand your argument is this is ambiguous. Unambiguous. Would you still be allowed to come into Court under those circumstances and make the same argument? As a matter of principle, I think yes. I think the answer is yes, Your Honor. But I don't think that's the circumstance. As a matter of principle, yes. So that means, if I understand you, that parties are never free to enter settlements and have them entered into the record in the form of a consent order unless they confine expressly to ITC-enabling statutes? Yes. A party cannot settle with an agency in such a way that the agency is purporting to regulate lawful conduct, and that's what we think has happened here. The ITC is regulating upstream component sales. But what if you drafted it? I'm going back to my unambiguous one, not the one you have here. But what if you, UPI, drafted it, presented it to the agency, and expressly say to them, we realize we're giving up more than we need to, but we want this enforcement action to go away because it's expensive, the transaction costs on us are high, so we want to make sure that, agency, you're willing to stand down, so this is all the stuff we're going to give up. Suppose all of that is in the record, clearly and unambiguously. Still, you get to come to court and make this argument? That would be a very different situation than what we have here, but, Your Honor, still, yes, I do believe that the principle still would apply. So this goes back to the question I fully answered before. Where, then, does the agreed party go for enforcement of this contract? They go to the commission and the enforcement of the commission. The commission can't enforce it fully. The deposit that you say cannot be enforced by the commission and, therefore, can't be enforced on appeal. Where do they go? Do they go to the district court? Ah, I see, Your Honor. If the complainant seeks regulation over the importation of downstream third-party products, this court said in Kyocera that what the complainant needs to do is name those third parties as respondents in the 337 violation proceeding. Even if they don't know who they are? If they don't know who they are... Or even if that occurred after the agreement was entered into, so that we are certain who the customer is going to be. You're saying the district court can't enforce it either? In this case, Rich Tech knew who the third parties were, and it could have named them, and that's what this court said in Kyocera. Let's say they didn't know at the time they signed the agreement. If the complainant doesn't know who the third parties are, then it has the ability to seek a general exclusion order and to seek the heightened findings required for a general exclusion order. Does it say they need to bring another action in the commission in order to enforce the prior agreement? If they're trying to enforce it against downstream third-party products, the answer is yes, Your Honor. Now... Go ahead. So, tell me if I understand your argument right. It is this agreement cannot be interpreted to exclude third... UPI for aiding and abetting a third party who imports into the U.S. because it would be outside the enforcement authority of the ITC to do that. Is that your argument? That's the first reason. The second reason is there's... Okay, well, I guess part of my problem is, just by virtue of the fact that you're suggesting that the agreement or the consent order is overly broad and it would extend beyond the authority that the ITC has, you expressly waived any right to challenge the validity of the order. So the difficulty I have is if it's overly broad but clearly written, you don't have the right to challenge the validity. First, I don't think it's clearly written, but with respect to the ability to challenge validity, I don't think we're challenging validity, Your Honor. We're not saying the consent order is void. We're not saying that it's invalid. It has scope. We simply believe the commission's construction of it gives it impermissible scope. So I think it's an interpretation issue. Our position is not that the consent order is invalid. It's valid insofar as it regulates importations of UPI's own products. UPI, they make the DCDC controllers, right? Yes, Your Honor. Do they make the larger products, the motherboards? No, Your Honor. No. So then when it says products in the consent order, whose products could this consent order possibly be referring to other than third-party products? Let me refine my answer. All right. UPI does provide evaluation boards so that customers can test their chips. Those are UPI products that contain DCDC controllers. Those are products that could be regulated under the products containing same provision. But UPI doesn't make the commercial downstream product. That's what I thought your question was referring to. Okay. Well, we've exhausted your time, Mr. Levitin. Let's hear from the other side. Thank you. May it please the Court. Clark Cheney for the Commission. The argument regarding the order as being beyond the scope of the Commission's authority has been waived for at least three reasons, one of which Judge Moore has mentioned. The order itself prohibits challenging its validity. Further below, when the ALJ found a violation of the consent order based on the importation of downstream products, it was UPI's obligation to raise its argument that that was ultra-various to the Commission in its petition for review. UPI did not do that. Further, UPI went beyond that in arguing at the Commission that the very interpretation of the aiding and abetting clause that it argues against in this appeal, it urged the ALJ to adopt. And that can be found in the record at JA 5874 and in the Commission's brief at page 33. Second, I'd like to address my opponent's reference to supposed lawful importation and that the Commission's enforcement somehow inappropriately prescribes lawful importation of downstream products. There is no lawful importation of a product that infringes the U.S. patent. It's prohibited under the Patent Act and it's prohibited under Section 337. Now, the forum or the procedure for going after those products differ according to various statutes. But there is no such thing as lawful importation of a product that infringes a U.S. patent. The Commission's order was not directed to anyone other than UPI. It was UPI that submitted the consent order. It was UPI that agreed not to aid and abet the importation of downstream products. And it was UPI's actions in selling products into channels that it knew would result in importation into the United States that the Commission found to violate the order. It wasn't the actions of anyone else and the order was not directed to anyone else. It was solely personal to UPI. And that raises no problems with Kyocera. Kyocera was concerned with downstream importers who were affected by the literal scope of a limited exclusion order in contradiction to the portions of Section 337 that allowed the Commission to issue that exclusion order. None of those issues are present in this case. Substantial Supreme Court authority supports the Commission's, contradicts my opponent's argument that an agency can't issue a remedy larger than it can find a violation of its own statute. I'd refer the Court to the Supreme Court's decision in Rubberoid and FTC v. National Lead. This Court has applied at least National Lead in the context of patent infringement in the Spindle Fabrics case and has said that even when an injunction from a district court prohibits something more than infringement, that's permissible if it's to remedy the infringement. And here we have unfair acts. We have the importation of products that infringe and the Commission's remedy relating to UPI's part in that was reasonably related to the statute. Mr. Chaney? Yes. The green brief seems to strongly suggest that what's going on here is well within the ITC's statutory authority, and I didn't see your red brief making that case. The red brief laid out our statutory authority for entering consent orders and for enforcing them, and this Court's precedent for the enforcement of consent orders in San Juan. I guess what I'm wondering is does the ITC agree with everything the green brief says? With respect to the Commission's authority to enforce this order in this case, absolutely. Absolutely. But even without the consent order, would they have had the ability to do this? Could the Commission have found a violation in the first instance against UPI? Certainly. If this case had gone to trial, then we would have some facts to discuss that, but it had not gone to trial because of the entry of the consent order. But certainly the Commission could have ordered UPI to stop selling for importation. That is a fundamental unfair trade practice defined in Section 337. We don't even have to get to aiding and abetting. Right in Section 337A, an unfair trade practice is selling for importation, so the Commission could certainly address this in the first instance. I also wanted to briefly address my opponent's argument that because the effect of this order might result in the exclusion of downstream products, it's somehow beyond the Commission's statutory authority. It's always going to be the case that a Commission order will have an effect on downstream people. Suppose that there was a U.S. manufacturer that relied on a particular imported component to make its goods. If the Commission issued a limited exclusion order that stopped the importation of that product, that's going to have an effect on the U.S. manufacturer that the Commission wouldn't have been able to order in the first instance. Like Tian Rui. Like Tian Rui. Yeah, I lost that one. So that doesn't mean that the Commission acted beyond its statutory authority. I'd like to briefly address a couple of other points. Substantial evidence supports the Commission's determination of a violation for 54 days. The Commission's brief discusses at pages 37 to 42, emails from UPI's executives providing evidence that they knew that these sales to these particular foreign distributors and contract manufacturers would result in the importation of products into the United States. At JA-171, the ALJ looked at competing evidence about the time it would take for a product to leave the UPI manufacturing line to being imported into products in the United States. It went with the longer time that UPI suggested of five months. That was certainly supported by substantial evidence. Still seems very much like a rough cut, right? Isn't that kind of an arbitrary number, five months? I would suggest it's not arbitrary where we had an expert suggesting three months supported by underlying evidence and an expert suggesting five months supported also by competing underlying evidence. The ALJ had to make a credibility determination, and he decided the longer of the time period. One could argue that three months, five months, six months, eight months, maybe any of the chosen dates could be both over-inclusive and under-inclusive. It's entirely possible, but that's why we have fact finders to do their best with the facts that they're given, and so long as those facts, so long as their conclusions are reasonable and supported by substantial evidence, this court should affirm them. I'd urge the court to look particularly at the court's decision in San Juan, which is the only precedential opinion that I'm aware of looking at enforcement of a consent order, and that sets forth the evidentiary standard that the commission has to satisfy. Violation of a consent order should be proved by preponderance of the evidence, and San Juan specifically found that circumstantial evidence can satisfy that standard, and this court affirmed circumstantial evidence of violation. What was the circumstantial evidence in San Juan? It had to do with certain models of magnets. I'm afraid that I don't have the particular facts at my fingertips, but I can certainly, if the court would like, provide a letter that would describe that further. Can I ask you a question about this five-month thing? Certainly. So what if I thought the commission's five-month determination was not supported by substantial evidence because it was too long, that you should have excluded all products at the three-month point rather than five months, and that that's, in fact, the only thing that the record supports? What happens then? They didn't appeal the five-month too-long thing, right? The only person that appealed the five-month issue is them saying it's too short. The other side didn't appeal saying it's too long. But what if I think the only evidence of record supports, in fact, a shorter time period such that more products should have found to be within the penalty range? What do we do then? Then the commission's determination with respect to at least 54 days should be affirmed because those would all be after the five-month period. And then if the court found no substantial evidence or that a reasonable person looking at this record could not have concluded that the five-month period was reasonable, then the court would need to remand for further deliberation. Well, no, but would I? Because I'm saying they didn't appeal it, right? There's no cross-appeal here. The only person that appealed was the appeal by UPI saying five months is too long, right? Then I suppose the issue would be waived by the complainant and the commission would be affirmed. I see my time has expired. Is there any further questions? Okay. Thank you. Good. Thank you, Mr. Chaney. We'll hear from the intervener, Mr. Atkinson. May it please the Court, I'm Bill Atkinson on behalf of intervener Rich Tech. The commission acted well within its statutory authority in enforcing the consent order here. As the Court is well aware, under 337C, the commission has the authority to terminate a proceeding short of a determination based upon a consent order. And under 337F1, the commission has the authority to enter an order ordering parties to cease and desist from unfair acts involved. This Court has recognized in the San Juan case that these two orders are cousins or are kin. Indeed, they cite an old rule-making announcement by the commission for that premise. Clearly as well, the assessment of penalties is well within the statutory authority of the commission under 337F2, and that's the penalty and the only penalty that was assessed here. The argument that the Court's decision in Cayucera somehow changes that is just incorrect in our view, Your Honor. The Cayucera case turned on the statute, and it turned specifically on a limitation in the statute, section 337D, that limits the authority of the commission to bar imports from parties that are not respondents to the proceeding. It has an in personam due process aspect to it, and it's specific to the statute. That's not specific to the statutes that are involved here, which is 337C and 337F1. It's true that you wouldn't get to a consent order unless you had a respondent agreeing to the order that is in question. But that's fine. Here, the only party at the table, the only party answering to the penalty, is the respondent that agreed to the order. So there's no violation here at all, or no action by the commission that exceeds its statutory authority under 337, as we see it. As my colleague mentioned in the petition for review before the commission, UPI indicated that it could violate the order in two different ways. One of them was a direct way, and the other was an indirect. In the direct way of violating the order, it could import its own DC to DC controllers, which it admittedly did. It could also directly violate the order by selling for importation its DC to DC controllers, which it did as well. Sales for importation, by definition, occur in foreign countries, at least unless there's some weird export-then-import again involved here. And in Tianrou, the sales are occurring overseas. They ultimately become imports into the United States, and under this court's precedent, that violates the statute here. So the court can affirm the commission's enforcement action here looking only at the direct violations that UPI has committed. There is an indirect violation that the commission added on to what the ALJ discussed that deals with the aiding and abetting and encouraging and participating clause of the consent order, but I don't believe the court has to reach that in order to affirm this case. But I believe that the commission should be affirmed in that regard as well. We believe that, for reasons that my colleague has already indicated and that I've mentioned briefly, that CAESER is not controlling this. And if there is a decision of this court that is most helpful to the court in deciding that, it would be the Tianrou decision, in which case the salient transactional facts of that case mirror the facts in this case. The difference being, in that case, you were talking about whether or not a limited exclusion order could be enforced against non-respondents. Here we're talking about whether or not a penalty can be assessed against the respondent that agreed to the order. There hasn't been any discussion about the 190 patent specifically here today, but I don't believe the court needs to reach that issue for the reason precisely that it won't change anything. But if it does, we believe that the commission did not make the finding that UPI has suggested that it did, that UPI is indirectly or directly infringing the 190 patent. What the commission found was that when UPI's products are put into a downstream product, and that downstream product is imported into the United States, then there is infringement. And by virtue of them making the sales that they made overseas with knowledge that those products were coming into the United States, they are aiding, abetting, encouraging, and participating in that activity, which itself, and they did so knowingly, and that violates the consent order. Unless the court has any questions, I'm going to yield back. Thank you, Mr. Atkinson. Mr. Levitin, you have your rebuttal time. Thank you, Your Honor. First of all, contrary to what Mr. Atkinson said, there was no finding that UPI violated the sale for importation prohibition in the consent order. That's not what the commission held. The commission held that UPI violated the aiding and abetting provision of the consent order. And the commission didn't find that until the final commission opinion, which is why we submit there was no waiver of UPI in this position. The ALJ had made a violation determination based on the presence in the United States of third-party downstream products. The ALJ did not find which specific provision of the consent order UPI had purportedly violated and how UPI had purportedly violated, and that was the basis of UPI's petition to the commission asking that the commission reverse the ALJ. In response to that, the commission, for the first time in its commission opinion, stated that, made supplemental findings stating that UPI violated the aiding and abetting provision of the consent order and did so through upstream component sales in the distribution channels. So I don't understand, if you're on such strong ground, why you entered into a consent order, saying on its face just the opposite of what you're now telling us. Your Honor, UPI certainly believed when it entered into the consent order that it was entering into the remedy that the commission could have ordered had the commission found UPI in violation of Section 337. UPI certainly didn't understand the consent order language that it submitted to permit the commission to regulate a broader scope of importation-related conduct than the commission can otherwise. You argued in your initial brief to the commission appealing the enforcement decision of the ALJ, and you expressly talk about third parties, MSI, AMD, and ASUS. I don't know who those people are, but I assume they're not UPI. Is that correct? I'm correct. Okay. So you expressly argue that substantial evidence shows UPI took extensive precautions to prevent third parties, including MSI, AMD, and ASUS and their suppliers from selling or importing accused products into the United States. You've got two whole pages where you argue to the commission that you didn't knowingly aid and abet these people, MSI, AMD, and ASUS. So given that argument to the commission, in which you are quite clearly arguing against being found guilty only on the basis of knowingly doing this, how is that not an acquiescence in the notion that third party importations would fall into the class of products that are borrowed? Your Honor, UPI did try to keep its old generation products out of the United States. In fact, at end of lifetime, and it entered into the development of its new generation products. But that's not proof of anything more than cautious, prudent efforts to avoid even more litigation and claims by Rich Tech. No, no, no. On 5874, you say the consent order can be violated in two ways. Number one, a direct violation. UPI directly violates it, et cetera, et cetera. Number two, UPI indirectly violates it if it aids and abets others who import into the U.S. And then you explain in the two subsequent paragraphs that MSI, AMD, and ASUS are the kind of people who you could indirectly violate the consent order by selling to if you know that they are then importing the ultimate product into the U.S. You adopted wholesale the very construction that you're claiming now we can't give the consent order and argued it to the commission. Your Honor, I believe what we're referring to is circumvention, a circumvention of the consent order, which didn't occur here. That's what you didn't say. It's not circumvention. You said the consent order can be violated in two ways, directly by UPI importing and indirectly by UPI selling to someone else who would then import their product, which uses UPI technology. You made that argument clear as day. How does that not render completely frivolous what you're arguing to us today? Your Honor, I don't have that language right in front of me, but I believe we may have been referring to UPI's own product. You were not. It's clear. The other reason I believe that there's no waiver is I do think that this goes to the question of subject matter jurisdiction, which can't be waived. In particular, it goes to the commission's subject matter jurisdiction over unfair practices in import trade. This court said in Kyocera that without heightened findings required for a general exclusion order, the commission doesn't have the authority to regulate downstream third-party product importations. Those aren't unfair practices in import trade. You gave up the right to challenge the validity of the consent order by your own hands. You wrote the consent order and you gave up the right to challenge its validity. The argument you just made is a challenge to the validity. Respectfully, Your Honor, I disagree, but I think you understand our position. We do. Thank you, Mr. Levitan. Thank you, Mr. Cheney and Mr. Atkinson. This case is taken under submission.